UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NIKOLAOS VOGIATZIS,<br><br>    Plaintiff,<br><br> vs.<br><br>LIBERTY TRIPADVISOR HOLDINGS INC.,<br>GREGORY B. MAFFEI, CHRISTY<br>HAUBEGGER, MICHAEL J. MALONE,<br>CHRIS MUELLER, LARRY E. ROMRELL,<br>ALBERT E. ROSENTHALER, and J. DAVID<br>WARGO,<br><br>    Defendants. | Case No. 25-cv-1038 |

## COMPLAINT

Plaintiff Nikolaos Vogiatzis ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against Liberty TripAdvisor Holdings, Inc. ("Liberty TripAdvisor" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Liberty TripAdvisor, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Liberty TripAdvisor by

1

Liberty TripAdvisor affiliate Tripadvisor, Inc. ("Tripadvisor").

2.      On or about December 18, 2024, Liberty TripAdvisor entered into an agreement and plan of merger, (the "Merger Agreement"), whereby Tripadvisor will acquire Liberty TripAdvisor (the "Proposed Transaction") and shareholders of Liberty TripAdvisor common stock will receive $0.2567 in cash for each share of Liberty TripAdvisor common stock they own (the "Merger Consideration").

3.      On or about January 23, 2025, in order to convince Liberty TripAdvisor's shareholders to support the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC").  As detailed below, the Proxy Statement contains materially incomplete and misleading information concerning the structure of the stockholder vote.

4.      The special meeting of Liberty TripAdvisor shareholders (the "Special Meeting") will be scheduled and the definitive proxy statement that will be used to solicit stockholders' final votes will be disseminated to Liberty TripAdvisor's shareholders in the coming days.  It is imperative that the material information that has been omitted from the Proxy Statement be disclosed immediately so public stockholders may make an informed determination as to how to respond when they receive the forthcoming definitive proxy statement.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking further steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Liberty TripAdvisor shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8.     Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District and, upon information and belief, shareholders of Liberty TripAdvisor reside in this District and Defendants were aware that the Proxy Statement would be reviewed in this District.  *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a

judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal that was circulated in Salt Lake City, Utah).

**PARTIES**

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Liberty TripAdvisor common stock.

10.      Defendant Liberty TripAdvisor is a Delaware corporation and the parent company and affiliate of Tripadvisor, which operates online travel agencies, comparison shopping websites, and member reviews, operating across the world.  Liberty TripAdvisor Class A common stock and Class B common stock trade on the OTCQB Venture Market under the ticker symbols "LTRPA" and "LTRPB," respectively.

11.      Defendant Gregory B. Maffei ("Maffei") is Liberty TripAdvisor's President and Chief Executive Officer, and the Chairman of the Board of Liberty TripAdvisor.  Mr. Maffei is also Liberty TripAdvisor's largest shareholder, with control over shares representing more than 40% of Liberty TripAdvisor's total voting power. Mr. Maffei is also the Chairman of Tripadvisor's Board of Directors.

12.      Defendant Christy Haubegger ("Haubegger") is a director of Liberty TripAdvisor.

13.      Defendant Michael J. Malone ("Malone") is a director of Liberty TripAdvisor.

14.      Defendant Chris Mueller ("Mueller") is a director of Liberty TripAdvisor.

15.      Defendant Larry E. Romrell ("Romrell") is a director of Liberty TripAdvisor.

16.      Defendant Albert E. Rosenthaler ("Rosenthaler") is a director of Liberty TripAdvisor, and is also a director of TripAdvisor.

4

17.    Defendant J. David Wargo ("Wargo") is a director of Liberty TripAdvisor.

18.    The defendants identified in paragraphs 11 through 17 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Proposed Transaction

19.    Liberty TripAdvisor is a holding company for Tripadvisor, which is also publicly traded. As of December 31, 2023, Liberty TripAdvsior held an approximate 21% economic interest and 57% voting interest in Tripadvisor.

20.    Given the obvious ties and conflicts of interest, the Proposed Transaction implicates significant conflicts of interest that may have given Liberty TripAdvsior's insiders incentive to undervalue the Merger Consideration that would be paid to the owners of Liberty TripAdvisor's common stock.

21.    Indeed, the Proxy Statement itself acknowledges that before the Proposed Transaction was announced, another counterparty identified in the Proxy Statement as "Party 7" proposed to acquire Tripadvisor in the range of $18.00 to $19.00 per share. Upon information and believe, in light of the Tripadvisor stock that Liberty TripAdvisor held, a transaction at $18.00 to $19.00 per share of Tripadvisor would have implied superior consideration for Liberty TripAdvisor common stockholders as compared with the Proposed Transaction.

22.    On December 18, 2024, Liberty TripAdvisor and Tripadvisor executed the Merger Agreement.

23.    On December 19, 2024, Liberty TripAdvisor and Tripadvisor announced the Proposed Transaction.

24.    Notwithstanding the announcement of the Proposed Transaction, Party 7 has

continued to propose a better path for Liberty TripAdvisor shareholders. Indeed, Party 7 made a proposal on or about January 17, 2025 (the "Party 7 Proposal"), pursuant to which Liberty TripAdvisor's common stockholders would be paid $0.3080 per share, a significant increase to the Merger Consideration.

25.     However, the Tripadvisor Board has refused to consider the Party 7 Proposal.

26.     Given the plainly superior Merger Consideration that the Party 7 Proposal, Liberty TripAdvisor's public stockholders have reason to oppose the Proposed Transaction.

**B.      The Proxy Statement is Incomplete and Misleading**

27.     On or about January 23, 2025, in order to mislead and thereby prevent Liberty TripAdvisor's stockholders from registering their opposition to the Proposed Transaction, the Board authorized the filing of the materially incomplete and misleading Proxy Statement with the SEC.

28.     The Proxy Statement fails to clearly describe the structure of the shareholder vote, and misrepresents or omits information that is obviously material to shareholders deciding how to respond to the Proposed Transaction.

29.     Delaware law requires that the Proposed Transaction be approved by an affirmative majority of the aggregate voting power of Liberty TripAdvisor's common stock.

30.     Because the Proposed Transaction must be approved by an affirmative majority of the aggregate voting power of Liberty TripAdvisor's common stock, shares that are not voted at all still impact the vote because such non-voted shares are included in the denominator that is used to determine the number of shares that must affirmatively support the Proposed Transaction to achieve the majority threshold.

31.     In that light, the Proxy Statement indicates that the failure to vote will have "the same effect" as a vote to oppose the Transaction and "is the equivalent of a vote against the merger proposal":

> Your vote is very important, regardless of the number of shares of Liberty TripAdvisor common stock you own. ***A failure to vote your shares of Liberty TripAdvisor common stock, or to provide instructions to your broker, bank or nominee as to how to vote your shares, is the equivalent of a vote against the merger proposal*** and the charter amendment proposal.
>
> …
>
> Even if you plan to attend the special meeting, please sign, date and return, as promptly as possible, the enclosed proxy card (a prepaid reply envelope is provided for your convenience) or grant your proxy electronically over the internet or by telephone (using the instructions found on the proxy card). If you attend the special meeting and vote at the special meeting, your vote will revoke any proxy that you have previously submitted. ***If you fail to return your proxy or to attend the special meeting, your shares will not be counted for purposes of determining whether a quorum is present at the special meeting and will have the same effect as a vote against the merger proposal and the charter amendment proposal, as applicable***.
>
> If your shares are held through a bank, broker or other nominee, you are considered the "beneficial owner" of shares held in "street name." If you hold your shares in "street name," you will receive instructions from your bank, broker or other nominee that you must follow in order to submit your voting instructions and have your shares counted at the special meeting. Your bank, broker or other nominee cannot vote on any of the proposals to be considered at the special meeting without your instructions. ***As a result, if you do not provide your bank, broker or other nominee with any voting instructions, your shares will not be counted for purposes of a quorum and will not be voted at the special meeting, which will have the same effect as a vote against the merger proposal and the charter amendment proposal, as applicable***. If you give voting instructions to your bank, broker or other nominee with respect to one of the proposals, but give no instruction as to the other proposal, then those shares will be deemed present at the special meeting for purposes of establishing a quorum at the special meeting, will be voted as instructed with respect to the proposal as to which instructions were given, and will not be voted with respect to any other proposal.
>
> …
>
> **Q:     What happens if I fail to vote or abstain from voting on a proposal?**

A:      If you (i) are a stockholder of record and fail to submit a signed proxy card, grant a proxy over the internet or by telephone, or vote your shares at the special meeting, or if you (ii) hold in "street name" and you fail to instruct your broker, bank or other nominee on how to vote your shares, your shares will not be counted for purposes of determining whether a quorum is present at the special meeting, and such failure to vote will have the same effect as voting "**AGAINST**" the merger proposal or the charter amendment proposal, as applicable, but will not have any effect on the outcome of the vote on the compensation proposal or the adjournment proposal (assuming a quorum is present).

        If you abstain from voting by returning a proxy with an "abstain" instruction, your shares will be counted as present for purposes of determining the presence of a quorum, and such abstention will have the same effect as voting "**AGAINST**" the proposals.

…

*Merger proposal*: For the merger proposal, if a holder of shares of Liberty TripAdvisor common stock present in person via the Internet at the special meeting does not vote, or responds by proxy with an "abstain" vote, it will have the effect of a vote "**AGAINST**" such proposal. If a holder of shares of Liberty TripAdvisor common stock is not present in person via the Internet at the special meeting and does not respond by proxy, it will have the effect of a vote "**AGAINST**" the merger proposal.

Proxy Statement at Notice of Meeting, 22, 85

32.      The representation that the failure to vote will have the "same effect" and is the "equivalent" of voting to oppose the Proposed Transaction is materially misleading and incomplete. The purpose of this misrepresentation is to dissuade Liberty TripAdvisor stockholders from voting their shares against the Proposed Transaction and thereby reduce the threshold for obtaining a majority of the minority votes in favor of the Proposed Transaction.

33.      While shares that are not voted will impact the vote, because of the structure of the stockholder vote for the Proposed Transaction, a stockholder who ***actually votes*** to oppose the Proposed Transaction will have a greater impact on the stockholder vote.

34.     In order to at least partially mitigate the pervasive and obvious conflicts that Mr. Maffei faces in approving the Proposed Transaction, Mr. Maffei entered into a voting agreement (the "Maffei Voting Agreement") pursuant to which a portion of his shares would be voted in accordance with the public will.

35.     Under the Maffei Voting Agreement, Mr. Maffei has agreed to vote Liberty TripAdvisor common stock representing 33.37% of the total voting power of the shares of Liberty TripAdvisor common stock in favor of the Proposed Transaction, "with any shares in excess of such amount to be voted on such matters in the same proportion as voted by the stockholders of Liberty TripAdvisor other than Mr. Maffei."  *See* Proxy Statement at 72.

36.     The Proxy Statement does not clearly state whether shares that are not voted will be counted into the "proportion as voted by the stockholders of Liberty TripAdvisor other than Mr. Maffei."  Upon information and belief, that proportion will be calculated based on the shares that are actually voted and will exclude shares that are not actually "voted by the stockholders of Liberty TripAdvisor other than Mr. Maffei."

37.     Upon information and belief, the purpose and effect of indicating that a failure to vote will have the "same effect" and is the "equivalent" of voting to oppose the Proposed Transaction is to mislead the Liberty TripAdvisor's stockholders who oppose the Proposed Transaction to believe that they failing to vote is "equivalent" to voting against the Proposed Transaction when it is not.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

48.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

49.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

51.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Proxy, which attempts to minimize the number of shares voting against the Proposed Transaction.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information

to the Company's shareholders although they could have done so without extraordinary effort.

54. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent, recklessness, or intentional conduct.

56. The Company is also deemed negligent, reckless, or intentional as a result of the Individual Defendants' intent in preparing and reviewing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

62.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants

reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 30, 2025            **ADEMI & FRUCHTER LLP**

                                     By:   */s/ John D. Blythin*
                                           Guri Ademi (SBN 1021729)
                                           Shpetim Ademi (SBN 1026973)
                                         Jesse Fruchter (SBN 1097673)
                                         John D. Blythin (SBN 1046105)
                                         3620 East Layton Avenue
                                         Cudahy, Wisconsin 53110
                                         Tel. 414-482-8000
                                         Fax 414-482-8001
                                         gademi@ademilaw.com
                                         sademi@ademilaw.com
                                         jblythin@ademilaw.com
                                         jfruchter@ademilaw.com

                                         *Attorneys for Plaintiff*